# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN KEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 4:05CV558MLM** |
| vs. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Jo Anne B. Barnhart ("Defendant") denying the application for Social Security disability benefits

under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., filed by Plaintiff Kathleen M. Key

("Plaintiff"). Plaintiff has filed a Brief in Support of the Complaint. Doc. 15. Defendant has filed a

Brief in Support of the Answer. Doc.16. The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 8.

### I.
### PROCEDURAL HISTORY

On November 25, 2002, Plaintiff filed an application for Disability Insurance Benefits alleging

a disability onset date of November 7, 2002. Tr. at 47-50. The application was denied. Tr. 35-38.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 29. A hearing was

held before ALJ Jan Donsbach on June 9, 2004. Tr. at 197-210. The ALJ found that Plaintiff was not

disabled at anytime though the date of the decision, July 28, 2004. Tr. at 14-19. Plaintiff filed a

timely request for review with the Appeals Council which denied Plaintiff's request on February 11,

2005. Tr. at 5-7, 9-10. In denying the Plaintiff's request for review, the decision of the ALJ became

the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

**Testimony of Plaintiff:**

Plaintiff testified that she is unable to work because of constant pain in her back, because she is unable to stand very long because her legs become numb, and because she has a hard time concentrating due to depression. Tr. at 200. Plaintiff also said that her symptoms include tingling in her scar, pins and needles in both legs, and crying. Tr. at 201.

Plaintiff further testified that, at the time of the hearing, she was taking pain medication for her back; that sometimes she takes prescription medication; that when prescription medication does not help she takes Tylenol; that Tylenol lessens the pain; and that the pain does not go away with Tylenol. Tr. at 200-201. Plaintiff testified that she attended pain management; that she was given cortisone shots prior to her surgery in June 2003; and that she had no relief as a result of the cortisone shots. Tr. at 205.

Plaintiff also testified that she began seeing a psychiatrist seven months after her surgery; that she sees her psychiatrist once every three to four months; that she once saw a therapist in addition to the psychiatrist; and that the psychiatrist renews her medication. Tr. at 5-6.

Plaintiff said that she can walk "maybe a block"; that she can stand for ten to fifteen minutes before having to sit down; and that she can sit for twenty to twenty-five minutes. Tr. at 202.

Plaintiff testified that she lives in a house with her boyfriend; that her boyfriend works; that she does not do much during the day; and that she cooks dinner, empties the dishwasher, does everyday cleaning, and does laundry once a week. Plaintiff further testified that as a result of her

problems she does not do laundry as much; that she has to walk down steps rather than run down them; that she cannot bring a basket full of towels up the stairs; that she can bring two towels up the stairs at a time; that she does not "stand over the stove"; and that she cooks things which she can "stick in the oven." She also testified that she drives three miles to the grocery store and that she passes the time during the day taking her dog outside for a half hour and that when she does so she sits outside and watches the dog. Tr. at 203.

Plaintiff testified that she has problems getting out of the bathtub and has to have help; that if she lays down she cannot "get turned around sideways"; that she has problems with falling; that two weeks prior to the hearing she fell outside when her legs "gave out"; and that she had fallen several other times. Tr. at 206-207.

Plaintiff said that she may lay down in bed during the day for fifteen to twenty minutes if she is "really hurting" and that she does not sleep during the day. Tr. at 204. Plaintiff also testified that at night it takes her about a half hour to forty-five minutes to fall asleep; that she is usually up two to three times a night; that she has to get up and lay in different beds; that if she cannot fall asleep she takes pain medication; that when she takes pain medication she is usually up again within several hours; and that she sleeps an average of five and a half hours a night. Tr. at 203-204.

**Testimony of the Vocational Expert:**

A vocational expert ("VE") testified that Plaintiff's past relevant job was that of a "drywall taper, construction taper" which is medium exertionally and skilled. The VE testified that Plaintiff could perform light unskilled entry level work such as an "assembler small products II," cashier, and clerk. The VE further testified that with the need to alternate sitting and standing there would be no change in the jobs which Plaintiff could perform with the exception of a "cashier II there would be

a 50 percent erosion of the figures given" and that with the exception of simple work it is possible for a person to do the other jobs which the VE mentioned. The VE also testified that assuming that Plaintiff is "unable to maintain concentration, attention for two-hour periods at a time," it would be impossible for Plaintiff to perform competitive work. Tr. at 207-208. In response to a question asking at what frequency Plaintiff would the need to alternate sitting and standing be significant that it would eliminate work for Plaintiff, the VE responded that at no time would it have such an effect and that there are relatively few jobs where work would be precluded. Tr. at 209. The VE also said that the need to lay down during select periods of the day on an unscheduled basis would be incompatible with work activity. Tr. at 209.

### III.
### MEDICAL RECORDS

Stephen Haudrich, M.D., reported on July 29, 2002, that Plaintiff had recently transferred to his care from another doctor and that Dr. Haudrich's assessment was low back pain with some symptoms of weakness and sciatica in the lower left extremities. Dr. Haudrich's records of this date reflect that he prescribed Vioxx and that he recommended that Plaintiff have an MRI. Tr. at 129

An MRI report dated August 7, 2002, states that Plaintiff had central to the left paramedian disk protrusion at L5-S1 and degenerative facet disease mainly at L4-5 and L5-S1. Tr. at 117.

Dr. Haudrich's notes of August 9, 2002, reflect that Plaintiff had possible S1 radiculopathy on the left; that Plaintiff did "very well with Dr. Noguera when he prescribed a Medrol dose pack; that Dr. Haudrich prescribed another Medrol dose pack for Plaintiff; and that Dr. Haudrich referred Plaintiff to Dr. Albanna. Tr. at 125.

Records of Pain Management Services reflect that Plaintiff was seen on September 9, 2002,

by Gregory Chang, M.D.  Dr. Chang reported on this date that Plaintiff had complaints of lower back pain with radiation to the left leg and into the right hip since December 2001; that she rated her pain at 7 out of 10; that she said her pain was constant; that Plaintiff described her pain as intermittent radiation to the left leg to the knee and the buttocks; and that Plaintiff said that a Medrol dose pack took away some of her pain and did not completely relieve it; and that Plaintiff was taking Vioxx which helped minimally.  Dr. Chang reported upon examination that Plaintiff's back had flexion to 80 degrees, extension to 20 degrees lateral rotation, lateral rotation to 25 degrees without any pain. Dr. Chang further considered the results of Plaintiff's August 7, 2002 MRI and reported that his impression was lumbar radiculitis, possible bilateral sacroilitis, and lumbar HNP.  His plan was a lumbar epidural steroid injection and that if this failed, a bilateral sacroiliac joint injection.  Tr. at 95-96.

Records of Pain Management Services reflect that Plaintiff had epidural steroid injections on September 18, October 1, and October 21, 2002.  Tr. at 90-92.  Records of Pain Management Services also reflect that Plaintiff was seen on November 5, 2002, at which time she complained of back pain radiating into the left leg and right hip.  The impression on this date was lumbar herniated nucleus pulposus, lumbar radiculopathy, and facet degenerative disc disease.  Tr. at 90.

Records of St. Anthony's Medical Center reflect that Faisal J. Albanna, M.D., of Albanna Neurosurgical Consultants, saw Plaintiff on December 2, 2002, for back pain.  Dr. Albanna noted on this date that Plaintiff was initially seen in September 2002 for consultation regarding low back pain which Plaintiff reported having since December 2001; that she had a poor response to conservative treatment in physical therapy; and that she required surgical intervention.  Dr. Albanna's notes of this date further reflect that Plaintiff complained of low back pain; that Plaintiff was admitted for a lumbar

5

microlaminectomy at L5-S1, microdiscectomy at L5-S1, and instrumentation and plating at L5-S1 with placement of an internal bone stimulator which procedures Dr. Albanna performed.  Tr. at 101-102.

Dr. Albanna's records reflect that on January 7, 2003, he prescribed physical therapy for Plaintiff. Tr. at 138.

Alexander Beyzer, M.D., a doctor of Physical Medicine and Rehabilitation in the same office as Dr. Albanna, reported on January 7, 2003, that he also saw Plaintiff on January 7, 2003.  Dr. Beyzer reported that Plaintiff presented complaining of numbness and tingling in the legs and feet; that she was taking Valium, Oxycontin, and Percocet for her pain; that his impression was status post four weeks lumbar fusion; that Plaintiff had started physical therapy; that Dr. Beyzer was concerned about Plaintiff's going back to the construction business; and that Plaintiff was not sure if she would return to this work. Notes of this date state that Plaintiff reported that she "is feeling overall much better since the surgery.  She is able to move better. Her pain is significantly reduced since she had the surgery." Tr. at 148.

Dr. Albanna reported on March 6, 2003, that Plaintiff complained that both feet were still numb; that she had difficulty with her legs becoming numb when lying down at night; that it seemed like everything was worse; that she was having difficulty sleeping because of numbness and tingling; and that she found the numbness nauseating. Dr. Albanna prescribed Neurontin on this date.  Tr. at 147.

A Physical Residual Functional ("RFC") Capacity Assessment dated March 19, 2003, completed by a medical consultant, B. Huffman, states that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight hour workday, and

sit for a total of about six hours in an eight hour work day, and that her ability to push and/or pull was unlimited. The Physical RFC Assessment further states that Plaintiff can frequently climb a ramp/stairs, occasionally climb a ladder/rope/scaffold, frequently balance, kneel, crouch, and crawl, and occasionally stoop. The medical consultant further reported that Plaintiff had no manipulative, visual, communicative or environmental limitations. Upon reaching these conclusions the medical consultant considered Plaintiff's medical records. Tr. at 171-78.

Rajeshwar K. Luther, M.D., of Metro Imaging, reported on November 10, 2003, that an MRI scan of Plaintiff's lumbar spine showed no post-operative change from transpedicular fixation of the fifth lumbar and first sacral vertebra since the earlier study of August 7, 2002; that a laminectomy defect was present at the L5-S1 interspace; that magnetic artifacts were noted to arise from the transpedicular fixation and neurocutaneous stimulator device that was in place; that there was narrowing at the L5-S1 intervertebral disc space along with the loss of signal intensity within the disc; that the L3-L4 and L4-L5 intervertebral discs were fairly well hydrated; that there was no evidence of bulging or focal protrusion of the intervertebral discs at the L3-L4,L4-L5 and L5-S1 interspaces; and there was no evidence of any obvious focal enhancement following the intravenous administration of gadolinium. Dr. Luther's impression included degenerative L5-S1 intervertebral disc. Tr. at 179-80.

Ravi V. Shitut, M.D., reported on January 8, 2004, that Plaintiff presented for "evaluation referred by a family member." Dr. Shitut's notes reflect that Plaintiff complained of bilateral back pain and lower extremity symptoms; that she denied any particular injury; and that Plaintiff complained of bilateral pins and needles, bilateral buttock pins and needles, bilateral foot numbness that goes into her toes, posterior thigh shooting pain that radiates into her lower leg, shooting pains

that alternate in the legs, and difficulty with sitting. Dr. Shitut reported that upon examination Plaintiff had no difficulty walking on her tiptoes, that her straight leg raises were negative, that plain touch of the hand bothered Plaintiff, that she had some difficulty walking on her heels because of weakness on the right side, and that no obvious atrophy was seen. Dr. Shitut also reported that Plaintiff's August 7, 2002 scan showed localized degenerative disc disease and that the rest of Plaintiff's exam appeared normal. Dr. Shitut further reported that Plaintiff's November 10, 2003 scan showed some artifact from instrument technique present, equally significant artifact proximally most likely secondary to insertion of an electrical spinal stimulator, and two body end cages in place with vertical fixation. Dr. Shitut's notes of this date state that Plaintiff wanted to know if she should undergo spinal stimulation surgery to relieve her pain; that Dr. Shitut told her that he was not familiar with that surgery and that Plaintiff should discuss it with the doctor who recommended it; that his job as a surgeon would be to decide if Plaintiff's spinal fusion was solid; that "after a very long conversation, the feeling [Dr. Shitut] got was that all [Plaintiff] wanted to do was to apply for her Social Security"; and that Dr. Shitut then told Plaintiff that the reports and medical records from her routinely treating physicians would be more beneficial to her to that goal than Dr. Shitut's one time evaluation. Dr. Shitut's diagnosis was "post laminectomy syndrome rule out nonunion to L5-S1." Tr. at 181-82.

Dr. Beyzer completed a Physical Residual Functional Capacity ("RFC") Questionnaire dated July 13, 2004. Dr. Beyzer reported in this questionnaire that Plaintiff has seen this physician every six months; that her last visit was June 4, 2004; that Dr. Beyzer's diagnoses was that Plaintiff had lumbago; that the prognosis for Plaintiff was chronic back pain; that Plaintiff's symptoms included low back pain, numbness and tingling in her feet; that Plaintiff's pain was characterized as chronic

back pain, despite fusion; that the pain was daily, moderate and precipitated by activity; that clinical findings and objective signs were indicated as diminished range of motion in the spine, pain with motion, decreased sensation to light touch, and pin pricks in Plaintiff's feet; and Plaintiff had taken Vicoden, which caused drowsiness. Tr. at 191.

Dr. Beyzer further reported in the Physical RFC Questionnaire that Plaintiff's impairments lasted twelve months; that Plaintiff is not a malingerer, that Plaintiff's emotional factors did not contribute to the severity of her symptoms and functional limitations; that Dr. Beyzer did not identify any psychological condition affecting the Plaintiff's physical condition; and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in Dr. Beyzer's evaluation. Dr. Beyzer indicated that Plaintiff's experience of pain was severe enough that it frequently interfered with attention and concentration needed to perform simple work tasks; that Plaintiff could tolerate low stress jobs; that high stress might aggravate Plaintiff's back; that Plaintiff's functional limitations in a competitive work place situation were that she could only walk three city blocks without rest or severe pain.

Dr. Beyzer further reported in the Physical RFC Questionnaire that Plaintiff was able to sit at one time for twenty minutes, to stand at one time for thirty minutes, to sit less than two hours in an eight hour work day, and to stand/walk about two hours in an eight hour work day; that Plaintiff must walk nine minutes every hour; that Plaintiff needed a job that permitted shifting positions at will from sitting, standing and walking; that Plaintiff needs to take unscheduled breaks during an eight hour work day which breaks could occur every hour with an average of ten to fifteen minutes rest before returning to work; and that with prolonged sitting Plaintiff's legs needed to be elevated at ninety degrees. Tr. at 192-93.

Dr. Beyzer also reported on the Physical RFC Questionnaire that if Plaintiff had a sedentary job she would need to have her feet elevated forty to fifty percent of an eight hour work day; that Plaintiff must use a cane while engaging in occasional standing or walking; that Plaintiff could frequently lift and carry in a competitive work situation less than ten pounds; that Plaintiff could rarely lift and carry in a competitive work situation twenty pounds; that Plaintiff could never lift and carry in a competitive work situation fifty pounds; that Plaintiff could frequently look down (sustained flexion of neck), turn her head right or left, look up, and hold her head in a static position; that Plaintiff should never perform activities such as to twist, stoop (bend), crouch/squat, climb ladders, or climb stairs; that Plaintiff does not have significant limitations with reaching, handling or fingering; that Plaintiff's impairments are likely to produce "good days" and "bad days"; and that by Dr. Beyzer's estimate Plaintiff is likely to be absent from work as a result of her impairment more than four days per month. Dr. Beyzer indicated that there were no other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, and that the earliest date that the description of symptoms and limitations immediately applied. Tr. at 193-94. Dr. Beyzer completed a physician's statement approving the issuance of a disabled license plate to Plaintiff. Tr. at 196.

## V.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe

impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden  of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the

claimant is determined to be not disabled." Eichelberger, 390 F.3d at 590-91.

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support

an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted).  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  The plaintiff has the burden of proving that he has a disabling impairment.  42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence.

Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  Nevland, 204 F.3d at 857.

## VI.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position.  Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that the findings regarding her Residual Functional Capacity ("RFC") are not supported by substantial evidence based on new evidence from Dr. Beyzer which was not considered by the ALJ.  Plaintiff also contends that the determination regarding her RFC is not consistent with Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) and Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  Plaintiff further alleges that the ALJ did not properly consider Plaintiff's subjective complaints pursuant to Polaski.

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  Lauer, 245 F.3d at  703.  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Tucker v. Barnhart,

15

363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent

of the claimant's impairments to determining the kind of work the claimant can still do despite his or

her impairments. A "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d

at 704 (quoting Singh, 222 F.3d at 451. The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that

"'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam ), must

support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that

addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858

(8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a

professional." Id.

     RFC is "an administrative assessment of the extent to which an individual's medically

determinable impairment(s), including any related symptoms, such as pain, may cause physical or

mental limitations or restrictions that may affect his or her capacity to do work-related physical and

mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC

is the individual's maximum remaining ability to do sustained work activities in an ordinary work

setting on a regular and continuing basis, and the RFC assessment must include a discussion of the

individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has

limitations or restrictions beyond those caused by his or her medical impairment(s) including any

related symptoms, such as pain." Id.

     "RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As

stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC.

Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). At step 4 "RFC must not be expressed

initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." Id. "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff v. Barnhart, Slip Op. 04-3337 at * 5 (8th Cir., Aug. 31, 2005) (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, Slip. Op. 04-4447 at *5. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id.

The Eighth Circuit has recently held in Eichelberger, 390 F.3d at 591, as follows:

A disability claimant has the burden to establish her RFC. Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Id. We have held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001). "[S]ome medical evidence" must support the determination of the claimant's RFC, Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." Nevland v. Apfel, 204

F.3d 853, 858 (8th Cir. 2000).

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. Masterson, 363 F.3d at 737.

Plaintiff alleged disability based on degenerative disc disease of the lumbar spine, tingling and numbness in both legs, and depression. The ALJ found that there was no evidence of a medically determinable mental impairment as the record did not include any evidence of mental health treatment or an objective mental impairment. Indeed, the only evidence in this regard was Dr. Beyzer's opinion in the Physical RFC Questionnaire that Plaintiff's pain frequently interfered with the attention and concentration needed to perform simple tasks. Dr. Beyzer, however, did not report that Plaintiff had depression or that she was clinically diagnosed with any other mental disorder. To the extent that Dr. Beyzer's statement suggests that Plaintiff has a mental impairment which interferes with her ability to engage in substantial gainful employment, such a conclusion is not supported by any evidence on the record. Indeed, the opinion of the treating physician should only be given great weight if the treating physician's opinion is based on sufficient medical data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1985) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). Not only is Dr. Beyzer's opinion in regard to Plaintiff's ability to concentrate not supported by Plaintiff's

medical records or clinical data but there no medical evidence that Plaintiff sought treatment for a mental disorder. Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The court finds, therefore, that substantial evidence on the record supports the conclusion of the ALJ in regard to Plaintiff's alleged mental impairment.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations" Masterson, 363 F.3d at 737 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). In regard to Plaintiff's complaints of pain and numbness the ALJ considered the medical records cited above and concluded that Plaintiff cannot perform her past relevant work although he did find that she has the RFC for light work. The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 416.967(a). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6 (SSA).

In particular, the ALJ considered Plaintiff's medical records both prior to and after her December 2002 surgery. These records included Dr. Beyzer's notes of January 7, 2003, which reflect that Plaintiff's pain was significantly reduced since surgery and x-rays of this date which revealed good fusion at L5-S1 with intact instrumentation. The ALJ also considered Dr. Shitut's report of January 2004 that x-rays showed no evidence of instrumentation failure and that he ruled out non-union at L5-S1. The ALJ further considered the MRI of November 10, 2003 which revealed no

evidence of disc protrusion and a CT scan of January 26, 2004, which showed bony fusion at L5-S1, no definite spinal canal or neuroforaminal narrowing and no evidence of spondylolisthesis. The ALJ also considered that at the time Plaintiff completed physical therapy she was not taking any pain medication. Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994). Additionally, the ALJ considered the Physical RFC Assessment completed by the DDS medical consultant which Assessment concluded that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, and stand and/or walk and sit for about six hours in an eight hour work day. The only postural limitations which the DDS medical consultant found were that Plaintiff could occasionally climb a ladder and stoop. No other limitations were found.

Subsequent to the ALJ rendering his decision, Dr. Beyzer completed an RFC questionnaire. Contrary to Plaintiff's assertion, the Appeals Council did consider Dr. Beyzer's evaluation in the RFC questionnaire. Specifically, the Appeals Council stated that: "Dr. Beyzer's physical functional limitations are inconsistent with his treatment notes (Exhibit 8F), and other evidence of record. Therefore, we found that this new evidence does not provide a basis for changing the Administrative Law Judge's decision." Tr. at 5-6.

In regard to Plaintiff's complaints of pain and disability due to lumbar spine, tingling and numbness in both legs, Plaintiff suggests that Dr. Beyzer's opinion regarding her RFC should be given controlling weight. Dr. Beyzer did report in the questionnaire completed on July 13, 2004, that Plaintiff had diminished range of motion and pain with motion, that she could walk only three blocks, sit for twenty minutes at a time and stand for thirty minutes at a time, that she needs to walk every hour for nine minutes, and that she requires a job which permits shifting positions at will. Dr. Beyzer

did report, however, that Plaintiff is capable of low stress jobs; that she had no limitations in regard to reaching, handling, or fingering; that she had no limitations in regard to temperatures, wetness, noise, dust, fumes, gases or hazards. He stated that Plaintiff can frequently lift less than ten pounds and rarely lift twenty pounds but did not indicate how often Plaintiff could lift ten pounds. Tr. at 193. Dr. Beyzer also reported that Plaintiff could never twist, stoop, crouch, or climb and that she could is likely to be absent from work more than four days a month and that she could sit less than two hours in an eight hour work day. Indeed, these restrictions would be incompatible with light work. As stated above, the Regulations define light work as including lifting no more than 20 pounds at a time with *frequent lifting or carrying of objects up to 10 pounds* and state that the full range of light work requires *standing or walking*, off and on, for a total of approximately *6 hours of an 8-hour workday*.

On the other hand the DDS medical consultant concluded, based on Plaintiff's medical records, that Plaintiff was capable of light work. Moreover, Dr. Beyzer reported on January 7, 2003, that Plaintiff said she was feeling much better since surgery, that she was able to move better, and that her pain was significantly reduced. Approximately a year later after Dr. Beyzer's January 2003 report Plaintiff sought treatment from Dr. Shitut whose findings are summarized above. It is significant that Dr. Shitut examined Plaintiff and reported that she had localized degenerative disc disease but that the rest of her exam was normal and that he saw no evidence that her instrumentation had failed. Upon discrediting Plaintiff's complaints of pain, the ALJ considered Dr. Shitut's notation that all Plaintiff wanted to do was to apply for Social Security. The Eighth Circuit has held that an ALJ may discount a claimant's subjective complaints for, among other reasons, that he appeared to be motivated to qualify for disability benefits. Eichelberger, 390 F.3d at 590 (holding that although the

ALJ found that the claimant had objectively determinable impairments, the ALJ properly considered that the claimant's incentive to work might be inhibited by her long-term disability check of $1,700 per month); Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir.1996) (holding that the ALJ to judge properly considered a strong element of secondary gain upon discrediting the claimant). While Dr. Shitut's records reflect that his examination and evaluation of Plaintiff were extensive, Dr. Shitut did not opine regarding Plaintiff's ability to lift, sit, and/or stand, which abilities are relevant to a determination of whether Plaintiff can engage in light work.

Significantly, Plaintiff has not submitted evidence that she sought treatment from Dr. Beyzer after January 7, 2003,[1] although Plaintiff submitted the Physical RFC Questionnaire completed by Dr. Beyzer in July 2004, in which Dr. Beyzer's conclusions are inconsistent with Plaintiff's ability to engage in light work.

As stated above, an ALJ is not required to follow the opinion of a treating doctor. Rather, "[i]t is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and

---

[1]        In this RFC Questionnaire Dr. Beyzer stated that he saw Plaintiff every six months and that he last saw her in June 2004. The record, however, does not include records of this treatment.

laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996).   Additionally, SSR 96-2p clarifies that 20 C.F.R.  § § 404.1527 and 416.927 require that  the ALJ provide "good reasons in the notice of the determination  or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

The Eighth Circuit holds that "if a treating physician ... has not issued an opinion which can be adequately related to the [Social Security Act's] disability standard, the ALJ is obligated ... to address a precise inquiry to the physician so as to clarify the record." Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984) (quoting Lewis v. Schweiker, 720 F.2d 487, 489 (8th Cir.1983).

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.").

Other than the opinion of the DDS consultant, who did not examine Plaintiff, the record does not reflect a medical opinion other than that of Dr. Beyzer, Plaintiff's treating doctor,  regarding Plaintiff's physical limitations, if any. As such, it cannot be said that the decision of the ALJ discrediting the opinion of Dr. Beyzer is based on substantial evidence on the record as a whole. Indeed, the ALJ was not required to adopt Dr. Beyzer's conclusions regarding Plaintiff's RFC if the record included medical evidence to the contrary.  However, considering the incompleteness of the record as discussed above, the court further finds that the record is insufficiently developed to support the ALJ's decision.   The court finds, therefore, that this matter should be reversed and remanded to the ALJ so that the record can be fully developed in accordance with this decision.  Upon remand the

ALJ should recontact Dr. Shitut and request that he conduct a Physical RFC Assessment of Plaintiff and/or opine regarding Plaintiff's ability to lift, carry, sit and stand. In the event Dr. Shitut is unavailable, the ALJ should request that Plaintiff undergo such an evaluation by another specialist. Because the court is reversing and remanding this matter the court need not address at this time other reasons why Plaintiff suggests that the ALJ's decision is not based on substantial evidence.

## VII.
## CONCLUSION

The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ is directed to fully develop the record in a manner consistent with this court's opinion. The court stresses that *upon reversing and remanding this matter it does not mean to imply that the Commission should return a finding of "disabled."* The court is merely concerned that the Commissioner's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Brief in Support of Complaint is **GRANTED**, in part, and **DENIED**, in part. [Doc. 15]

**IT IS FURTHER ORDERED** that the relief which Defendant seeks in her Brief in Support of Answer is **GRANTED** in part, and **DENIED**, in part. [Doc. 16]

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin

which determines the thirty (30) day period in which a timely application for attorney's fees under

the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>16th</u> day of February, 2006.